## Hilbish *versus* Hower.

1. The authority of a tax collector is his warrant; the duplicate is but a memorandum of the amount.

2. A collector, without a warrant, meddling with a tax-payer's property is a trespasser.

3. There must be a law authorizing the issue of the warrant, some person appointed to issue it, it must conform to the law and be issued by the proper person, or it is no protection to the collector.

4. The collection of bounty tax must be by the process and officers employed to collect the other taxes of the municipal division levying it.

5. A tax levied by school directors is to be collected by a person appointed by them and under a warrant issued by the president and countersigned by the secretary.

6. A warrant to collect taxes levied by school directors, signed by two justices of the peace, is of no validity; justices have no authority to issue such warrant.

7. Whether a member of a school board can be appointed collector of taxes assessed by the board? *Dubitatur.*

January 28th 1868. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. STRONG, J., at Nisi Prius.

Error to the Court of Common Pleas of *Union county:* No. 113, to January Term 1868.

Jacob Hilbish brought an action of trespass in the court below against John Hower and William Kline. The writ was issued January 24th 1868.

The trespass complained of was that the defendant seized and sold a horse and bridle belonging to the plaintiff under a warrant to collect bounty tax levied by the school directors of Lewis township, which warrant was alleged by the plaintiff to be illegal.

The plaintiff proved the seizure and sale of the horse and bridle by the defendants in the fall of 1864.

The defendants gave in evidence the minutes of a meeting of the school directors of Lewis township of October 3d 1864, showing: "Present John Hower, president; Joseph Sanders, secretary; Jacob Speiglemeyer, Jacob Ruhl, Edward Orwig, Jacob Hilbish, absent," and assessment of a county tax on the taxables of the township; John Hower appointed collector, and John Reish treasury.

The defendant offered in evidence the warrant to "John

[Hilbish *v.* Hower.]

Hower, collector of local bounty tax," authorizing him to collect from every person named in the duplicate annexed the tax with which he stood charged; to levy the amount by sale of the goods of such persons as should refuse, &c.

The warrant as offered in evidence was signed thus:—

"J. A. MORNINGSTAR, Prs.

JOHN REISCH, Treasurer.

| | |
|---|---|
| JOSEPH SANDERS, Sec. | W. E. SMITH, J. P. |
| C. P. SCHWENGLE. | SOL. B. HOFFMAN, J. P. |
| | ABRAHAM MENSCH, Treasury." |

Accompanying the warrant was the duplicate, charging Jacob Hilbish, the plaintiff, with $136.43 tax.

Sanders, the secretary, testified that he was present when the warrant was issued and put into Hower's hands; that there were then no other names to it than those of Hoffman and Smith.

The offer was objected to by the plaintiff and admitted by the court, and a bill of exceptions sealed.

The plaintiff asked the court to charge that the warrant and duplicate were not a justification for taking and selling the plaintiff's property, which the court refused, and charged, amongst other things:—

"In this case the defendant cannot be held responsible for levying on and taking away the horse and bridle and selling the same for the payment of the tax assessed against the plaintiff."

There was a verdict for the defendants.

The plaintiff took a writ of error, and assigned as error admitting the warrant and duplicate and the answer to the plaintiff's point.

*H. Bucher* and *W. C. Lawson,* for plaintiff in error, referred to Acts of May 8th 1854, § 31, Pamph. L. 624, Purd. 172, pl. 51; March 25th 1864, § 3, Pamph. L. 86, Purd. 1365, pl. 122; April 15th 1834, § 19, 33, 35, Pamph. L. 514, 516, Purd. 938, 941, pl. 38, 61, 63; Stephens *v.* Wilkins, 6 Barr 260; Pearce *v.* Torrence, 2 Grant 82; Chalker *v.* Ives, 5 P. F. Smith 81.

*W. Van Gezer* (with whom was *A. H. Dill*), for defendants in error, cited Flannery *v.* Deckert, 1 Harris 505; Pratt *v.* Harding, 6 Casey 526; Colman *v.* Anderson, 10 Mass. 119; Mowry *v.* Todd, 12 Id. 283; Hays *v.* Drake, 6 Gray 387; Moore *v.* Allegheny, 6 Harris 55; also the School Law of 1834, *supra.*

The opinion of the court was delivered, February 6th 1868, by THOMPSON, C. J.—" The authority of a collector of taxes to collect is his warrant. The duplicate is but a memorandum of the amount he is to collect from the parties therein named respectively.

[Hilbish v. Hower.]

Without a warrant the collector becomes a trespasser, as soon as he meddles with the property of a tax-payer. There must also be a law authorizing the issue of a warrant, and some person appointed to issue it, and .it must conform to the law authorizing it, and be issued by the proper person designated by law, or it is no protection to a collector." This the counsel of the plaintiff in error has so well said I quote it entire. It might be regarded as text law and sufficiently apparent without the citation of authorities, but I may refer to the two authorities at hand of Pearce v. Torrence, 2 Grant 82, and Stephens v. Wilkins, 6 Barr 260.

In some of the numerous cases recently decided in this court on the subject of bounty taxes, we have held that the collection of such tax is by the process and officer employed to collect the other taxes of the municipal division levying it. Where a school board levies a tax, it is collected by some suitable person appointed by it, and under a warrant issued by the president and countersigned by the secretary. There is a general authority accompanying the collector's duplicate, but under it, he may enforce the collection of the tax by seizure and sale of any delinquent's goods and effects with like power and authority as may be exercised by a collector of county taxes: Purd. Dig., 9th ed., 172, pl. 51. That such collector may enforce the payment of county taxes by seizure and sale of goods or arrest and imprisonment of the body, see Wickersham v. Russell, 1 P. F. Smith 71; Purd. 939, pl. 39.

The tax out of which this difficulty grew, was assessed by a school board and the warrant for its collection was issued and signed by two justices of the peace, instead of the president and secretary, a process not known to any mode of collecting taxes. The justices had no authority to issue such warrant; it was no warrant and had no more legal force than if issued by any two citizens of the thousands perhaps that resided in the district. So signed and so issued it was put into the hands of the collector appointed by the board, who, by the way, was the president of the board. Armed with this authority he went forth, and, among other of his doings, levied on the plaintiff's horse and bridle and sold it, and for so doing this action was brought.

This warrant was void in this form from beginning to end; but when it was offered as a justification it had received additions. The names of Mr. Morningstar, President, John Reisch, Treasurer, Joseph Sanders, Secretary, and C. P. Schwengle, Secretary, and Abraham Mensch, Treasurer, all purporting to be officers of the school board, were to it. This, with the names of the two justices on it at the outset, made it a formidable affair. It was, of course, objected to as not authorized by law, nor proved to be executed by the school officers. The court overruled the objections and admitted the paper.

[Hilbish *v.* Hower.]

If the warrant was any the better for the signatures of these school functionaries, certainly the court ought to have, at least, required some proof of their official character, and then of the genuineness of their signatures, but he did neither, and this would, of itself, be sufficient to reverse the case. But the testimony showed conclusively, I think I might say, that Mr. Morningstar was not president, nor a member of the board in 1864, when the warrant issued and the goods of the plaintiff below were levied and sold. He was of the new board, elected in March following. Allowing to him and the other school officers the ordinary presumption of honesty, and that they did not sign the warrant until after they were elected, their authentication did not take place till after the lapse of between three and four months after the taking of the plaintiff's horse. Of course, these gentlemen are not sufficiently gifted or qualified to render that valid which was invalid before they had official existence, and impart a healing effect to a past transaction. Yet something like this must have pervaded the mind of the court in admitting in evidence the warrant and in instructing the jury that it was a justification of the defendants. It was neither in form, substance, authentication nor by proof fit to be admitted, and the court erred in receiving it and allowing to it any effect whatever. One might feel some sympathy for the defendants on account of the predicament into which they have gotten themselves, were it not that one of them was the president of the school board, turned into a collector of the tax levied by his own board, and should have been better informed, and the other was probably his bailiff, who was inexcusable for reposing so much confidence in his superior. But this does not matter much. We hold that the warrant, when issued was void, and unless it had been reissued by Morningstar, and countersigned by the secretary before the property was seized, which was evidently not possible, because they were not elected until afterwards, as we understand the facts, it afforded no justification to the defendants whatever. Even if it had been signed by these school functionaries before the seizure of the plaintiff's property, the court erred in admitting it without proof of execution. We do not mean by our silence to approve as right and lawful the appointment of a member of the school board as collector; I doubt it much. But it is possible, if armed with a proper warrant, he might not be guilty of a trespass in executing it. We need not decide this.

Judgment reversed, and *venire de novo* awarded.